Dear Mr. Norman:
This office is in receipt of your request for an Attorney General's opinion on behalf of the Houma-Terrebonne Airport Commission ("H-TAC").
Your letter advises that H-TAC is an airport authority created and operating pursuant to the provisions of LSA-R.S. 2:131 et seq. and 2:601
et seq. You further advise that one of the H-TAC's lessees, Petroleum Helicopters Inc. ("PHI"), wants to move its base of operations to another location at the Houma-Terrebonne Airport. H-TAC is interested in accommodating PHI, as PHI is a valued tenant and accounts for a large number of flights at the airport. These flights are considered in the operations count which the Federal Aviation Administration ("FAA") uses to gauge whether or not the Houma-Terrebonne Airport meets the criteria necessary to warrant FAA supervision and funding. PHI has apparently also indicated to H-TAC that it is considering relocation off of the site of the airport, which you advise would have a drastic effect upon the airport's continued economic health. PHI has requested that H-TAC consider any and all avenues of economic inducement that may be available in order to make the option of staying at the airport more economically attractive to it.
H-TAC is currently considering two options, and requests our opinion as to the legality of same.
The first and, according to your advice, the most desirable option H-TAC is considering would be for PHI to pay for and construct the office building and hangar facilities at a cost of approximately $1 million. H-TAC would pay for and build the rest of the improvements needed to relocate PHI, which are primarily infrastructure such as a ramp, helipads, parking lots, etc., at a cost of approximately $2.5 million. The H-TAC would lease both the ground and the infrastructure improvements that it builds to PHI over a 10 or 20 year period, with monthly payments equal to an amount which will fully repay the H-TAC for its expenditures, plus interest.
The second option under consideration would call for PHI to construct the entire facility (buildings plus infrastructure) for approximately $3.5 million, sell it to H-TAC, and H-TAC would then lease it back to PHI for a 10 or 20 year period, again fully repaying the H-TAC for its expenditures. At the end of the lease period, the title to the building would be transferred to PHI for a nominal amount.
In connection with your inquiry, we call your attention to the following provisions of law.
La. Const. Art. VI, Sec. 21 pertinently provides that "in order to induce and encourage the location of or addition to industrial enterprises therein which would have economic impact upon the area and thereby the state the legislature may by law authorize subject to restrictions it may impose, any political subdivision" to acquire and improve "industrial plant buildings and industrial plant equipment, machinery, furnishings, and appurtenances" and to "sell, lease, lease purchase, or demolish all or any part of the foregoing".
As previously noted, you have advised the undersigned that the H-TAC's authority stems from the provisions of LSA-R.S. 2:131 et seq. and 2:601
et seq. Pertinently, LSA-R.S. 2:135.1 provides airport districts and authorities with the authority to construct, equip, improve, maintain, and operate airports, with further authority to lease areas for operations space, improvements, including industrial development, and equipment on such airports or landing fields. We also draw your attention to LSA-R.S. 2:605, which provides that in connection with the operation of an airport or air navigation facility, airport authorities may enter into enter into contracts, leases and other arrangements with any persons, granting the privilege of using or improving the airport or any portion or facility thereof or space therein for commercial purposes.
Also pertinent to your inquiry is LSA-R.S. 33:4717.2, which in part, grants political subdivisions of the state which are permitted by law to own land, buildings, or other property for industrial inducement purposes, the authority to sell, lease or otherwise dispose of all or any part of industrial plant site, building, port, harbor or terminal facility, or other property owned by the political subdivision. This statute provides that the governing authority of the political subdivision may consider the potential value of the economic impact of the enterprise being induced to locate or expand within the political subdivision, as well as the value of the property involved, in determining the consideration of the transfer.
In our opinion, the above referenced provisions of law provide the H-TAC with authority to embark upon either of the options H-TAC is considering in an effort to retain PHI as a tenant.
We are aware that at least the second option under consideration (a lease of the building to PHI with an option to PHI to purchase same for a nominal amount at the end of the lease term), and perhaps the first as well, would arguably violate La. Const. Art. VII, Sec 14's prohibition of loans by political subdivisions to or for any person, association or corporation. However, in our opinion, the industrial inducement provisions of La. Const. Art. VI, Sec. 21, quoted above, provide an exception to La. Const. Art. VII, Sec. 14, in situations involving industrial inducement. La. Const. Art. VII, Sec. 14 pertinently provides: "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned . . .".
H-TAC also requests our opinion as to whether or not public bid laws and/or the law relating to leases of public lands needs to be complied with in light of the fact that these proposals might be exempt from those laws pursuant to the industrial inducement statute located at LSA-R.S.33:4717.2 et seq.
LSA-R.S. 33:4717.2, referenced above, provides that the governing authority of a political subdivision authorized thereby may consider the potential value of the economic impact of the enterprise being induced to locate or expand within the political subdivision, as well as the value of the property involved, in determining the consideration of the transfer. The provision for weighing the potential value of the economic impact of the transaction and the reference to an enterprise being induced to locate or expand within the political subdivision necessarily demonstrates that LSA-R.S. 33:4717.2 contemplates a negotiated transaction, rather than a bidding situation. Moreover, the authority granted by LSA-R.S. 33:4717.2 is "in addition to the authority granted by other laws." That language has been found to render the public bid laws inapplicable. See JTS Realty Corporation v. City of Baton Rouge,499 So.2d 274 (La.App. 1st Cir. 1986), writ denied, 503 So.2d 19 La. 1987). See also Attorney General's Opinion No. 98-358. It is our opinion that if the provisions of LSA-R.S. 33:4717.2 are properly followed and complied with, the contemplated transaction with PHI would be excepted from the provisions of the general statutes regarding the sale or lease of public property.
You have also requested our opinion as to whether or not sales tax exemptions would apply to those portions of the improvements which H-TAC builds with its own funds.
LSA-R.S. 47:301(8)(c), with reference to levy of sales and use taxes, excludes from the definition of `person' the political subdivisions of this state and any agency, board, commission or instrumentality thereof. As such, it is our opinion that the purchase of construction materials or equipment by the H-TAC for incorporation into public works such as described in your opinion request, is exempt from state and local sales tax. Attorney General's Opinion Nos. 00-137; 95-119.
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam